Appellant, Mr. Corn Revere for the Appellant, Mr. Caballero for the Appellee. Good morning, Your Honor. Good morning. May it please the Court, because P.S. P.S.I. has conceded that it's no longer seeking documents where there are claims of privilege for attorney-client privilege or work product privilege, and has agreed that the decision below should be vacated on that point. I'll focus instead on the First Amendment question. The basic question here is, can P.S.I. impose a virtually limitless obligation to search and catalog documents relating to six years of editorial decisions? Maybe you should start with mootness. Yes, Your Honor. Then we can get back to the merits, okay? Thank you, Your Honor. The Subcommittee is arguing that the issue is moot because the documents have been produced. We disagree because there's still meaningful relief that can be granted. This was a point that the Supreme Court addressed in Church of Scientology v. United States. Can I just ask you, before we get to the documents that have been produced, what about the documents that have not been produced? There still are documents that we are withholding on claims of privilege. Right. As to those? As to those, the case would not be moot to the extent that the Subcommittee still maintains an interest in seeking them. The Subcommittee has said it has no interest in them at all. That's right, Your Honor. They're saying they're no longer seeking the documents for which there is a claim of privilege. We maintain that the case is not moot with respect to the documents that have been produced as well. And that was the point. So are you conceding that it's moot with respect to the documents that have been withheld? Well, not to the extent the Committee is still seeking them. But it sounds like the Committee is not seeking them. So let's take it as a— It says, quote, the Subcommittee is no longer—I mean, from the brief—is no longer seeking documents withheld by Mr. Farrar. That's right, Your Honor. And with respect to those documents, the Subcommittee has also maintained that they would agree, to the extent it's moot, that they would agree to vacating the district court decision below. I don't know if they agreed to vacate. I think—I thought the footnote was a little more occasionally worded than that. We can ask them about that. I think cagey is the right term, Your Honor, where it says that we wouldn't have any real objection if the court then agreed to vacate. Right, but just on the subject of mootness without getting to vacater, it sounds then like, at least with respect to the documents that are being withheld, if we—it doesn't—it doesn't sound like you object to the notion that we would take at face value the Committee's statement that it doesn't seek the documents anymore. And as to those, the proceedings— That's right. And the difference between the two, Your Honor, is that one set of documents has not been produced. And because of those, there is no current damage. There's no remedy to be sought. Whereas, with respect to the documents that have been produced, there is still a meaningful remedy to be sought. And that is the kind of remedy that the Supreme Court addressed in Church of Scientology versus the United States, saying that even though the documents have been produced and you can assert that the damage has been done, there still is meaningful relief. And in this case, the relief that could be granted is return of the documents, denial of the subcommittee to continue to use them for outside, non-legislative purposes. What do you do with the Committee's argument that Church of Scientology did not involve a subpoena issued by Congress? And here there's a speech and debate clause defense, which renders the Court unable to provide any relief at all. Well, it's true. Church of Scientology did not involve a congressional use of documents. But other cases that we cited in our briefs, like the Proxmire case, U.S. v. McSurley, talk about how where there is a non-legislative use of documents, there still is a remedy that can be provided. The Scientology case really talked about how even though the documents have been produced, you can't argue that the case has moved because the damage has been done. Let's move on. And so that addresses that point. But the secondary point as to the speech and debate clause, to the extent these documents are being used for non-legislative purposes, then there is still meaningful relief. Can you go back? I'm sorry, but you cited McSurley? Yes, we did. That seems to support the Senate committee. It says that even though the materials come to the committee unlawfully or some other ways, quote, subsequent use by the committee in official business is privileged legislative activity. It is essential business, but to the extent it's being used for non-legislative purposes, then the documents can be ordered to be returned. I'm sorry, if they're not being used for legislative purposes? That is correct. Is there any evidence that they aren't being? Yes, there is. As a matter of fact, the supplemental article that we submitted, written by Senator McCaskill, talks about how the documents are being used for all kinds of non-legislative purposes, including being provided to outside litigators who are going to bring suit against Backpage, that as she writes in the article, that she doesn't need to use these documents for legislative purposes to achieve her objectives. The op-ed piece that she wrote in the Kansas City Star was something in the nature of a signed confession, that these are non-legislative purposes. And that's the very kind of thing that Hutchinson v. Proxmire talked about, where you have a senator using talk shows, using newspaper and press releases to talk about documents and materials that he otherwise came by. So is your argument limited? We could talk about non-legislative purposes, but is your argument limited to non-legislative purposes? What about if it's within the can of ordinary legislative purposes? Does this future debate clause interpose an obstacle to the Court's ability to grant relief? It does affect documents to the extent that Congress has demonstrated that it is using them for legislative purpose. I think the McCaskill article suggests that they are not being, but I think Doe v. McMillan speaks to that point, where even if materials are obtained for a legislative purpose, the private republication of documents introduced and made public at a committee hearing are not necessarily part of the legislative process. Here, one of the arguments we've made as well is that the entire exercise of the investigation was done not for a legislative purpose, but instead both to punish back page and to provide supplemental support for outside litigation. And so as a consequence, there are actions that the Court can take to provide meaningful relief. And keep in mind, in terms of mootness, we're not talking about a high threshold here. We're talking about whether or not there is some relief that can be granted that makes the case not moot, and that's exactly what's going on here. You're not seeking, like, an order from us to limit the use of the documents for legitimate legislative purposes. You want to claw back the documents. We do want to add return of the documents. Where there are documents that have not been disclosed, to of course not have those disclosed, there could be an order saying that the documents cannot be shared for non-legislative purposes outside Congress. There are a number of ways in which meaningful relief could be provided. Well, your answer to Judge Wilkins leads me to ask you a question about something else in the Senate Committee's motion. They say that any relief that here is barred, not just by speech or debate, but by Section 1365B, which says nothing in this section shall confer upon the court jurisdiction to affect, by injunction or otherwise, the issues or effect of any subpoena. And their argument is that anything we, if we were to issue an order, if we were to issue an order requiring the Senate to return the documents, that would affect the Senate's ability to use the documents for legislative purposes. So they don't even, they suggest that this is completely independent from the question of mootness and speech or debate. You just have a statutory bar here. Right, but the statute was designed not to convey additional authority on the courts to modify subpoenas. It was written in the context of cases like Eastland, where you have people suing Congress, but it's not in terms of an order where the Senate has gone through. I'm just looking at the language of the statute. The language of the statute says we have no jurisdiction to, quote, affect, by injunction or otherwise, the issuance or effect of any subpoena. That just, it seems like it covers this situation. Well, Your Honor, I think the, if it's read in that way, then it says that the Court of Appeals has no jurisdiction over a lower court's order that enforces a subpoena. And I think the statutory language is written with the assumption that this court does have jurisdiction over the lower court's order enforcing a subpoena. No, I wasn't arguing we didn't have appellate jurisdiction. I was saying that no court has jurisdiction to affect a subpoena, district court or us. It wasn't a question of appellate jurisdiction. I think we're talking about affirmative relief here, where you're talking about modifying a subpoena that the Senate has brought to you for enforcement. Well, let me just follow up on Judge Tatel's question. Could the district court have entered a protective order saying you have to turn over these documents to the Senate, but Senate, you can't use these documents for any purposes other than A, B, and C? Could the district court do that consistent with Section 1365B? I think that would have been modifying the terms of the subpoena. And just as it was argued in front of the district court that only a part of the subpoena could not be enforced, I think that would have added to the terms of the subpoena. Here, what we're asking for is relief that undoes the effect of the ruling below. So to claw back the documents, for example, does not modify the terms of the subpoena, but it does restore to the status quo ante the state of things before the order was granted. Well, then maybe you should have suffered contempt and not turned the documents over. I think we would have faced the same kind of issue. Certainly, the Senate would have been arguing that the speech and debate clause had the same effect of barring the relief. And in terms of the statutory analysis, I'm not sure suffering contempt would have changed the statutory argument either. I don't understand. Why would they say something about the speech or debate clause? Because if it's a contempt situation, the documents wouldn't have been turned over. So there wouldn't be no speech or debate clause obstacle to clawing the documents back. You would have somebody held in contempt. So we can ask them, but as I understand it, their speech or debate clause argument wouldn't apply in a situation in which you had contempt. Well, that is true, Your Honor, and we think it doesn't apply in this case in any event. If there are no further questions on the issue of mootness or statutory language, I would like to spend a couple of minutes at least on the merits. Yeah. And getting back to the basic question of whether or not the PSI can impose a virtually limitless obligation to search and catalog documents without regard to the First Amendment, we think that the district court made two fundamental errors of law. First, it vastly understated the First Amendment interests involved, and second, it failed to appropriately balance the respective interests. With respect to Mr. Ferrer's First Amendment rights, the court agreed that investigations are subject to the First Amendment, but essentially found that there were no significant First Amendment interests here because we were talking about the editorial policies applied to third-party content. This devalues the rights that have been recognized both in the brick-and-mortar world and also in rights involving online speech. With respect to traditional media, the courts have held in numerous cases that editorial decisions involving third-party content are protected by the First Amendment. That includes Denver area telecommunications. So that's definitely true that editorial decisions are protected by the First Amendment, where there's a bar against exercising editorial discretion. That brings that interest squarely into play. What exactly is the First Amendment injury that you're complaining of? Because asking for documents doesn't tell you that you can or can't exercise editorial discretion in one particular way. It's just asking for documents. Well, it's just asking for documents, but they're documents that detail the internal decision-making process on editorial decisions. So is the injury the unveiling of making those decisions non-confidential vis-à-vis the Senate? Is that the injury? Well, that's right. Just as in the Bercy case, when we're talking about the editorial decisions that went into the Black Panther Party newspaper, there you're talking about a very strong government interest because the articles were talking about violent overthrow of the United States and assassination of the president, how to make a Molotov cocktail, and so on. But the First Amendment interests of whether or not you could intrude on that then set up a balancing test and a burden-shifting analysis where once it was shown that there was a First Amendment interest, as there is in these editorial decisions, then the question became whether or not the government had met its burden. And one of the burdens is to lay on this. So it's the laying bare of the editorial decisions, that's what the injury is? I'm sorry, I didn't hear the first part of your question. It's unveiling the editorial decisions. It's two things. It is unveiling the editorial decisions, and it's the volume that we're seeking here. The cost. So you're talking about millions of editorial decisions all required to be produced. It would be tantamount to, I'm hesitant to suggest this hypothetical because I don't want to get anybody in any ideas, but let's say that Congress decided to investigate the growing problem of fake news, and they decided in pursuit of that that they would subpoena six years of editorial decisions from the online version of the New York Times and from CNN. Under this analysis, under the district court's order, they would have to first catalog and log every piece of paper that they claim to withhold on First Amendment grounds in order to make a First Amendment objection. And we argue that that simply is not a tenable position. And that was the position of the district court in Hood v. Google for the very same reasons. I see that my time is just about to expire. Okay. Thank you. May it please the court, Thomas Caballero from the Assistant Senate Legal Counsel for the Senate Permanent Subcommittee on Investigations. I want to go directly to the question of mootness that the court has been discussing with the opposing counsel. As they add, they've conceded mootness with regard to the attorney-client documents. The only distinguishing point between that, of course, and mootness to the documents that have been produced is their claim that there could be an effective remedy against the Senate. As we pointed out, there's no case in the history of the republic in which the courts have ordered the Senate how it can use, not to use, documents that it has acquired for its legislative views. Can I ask you this? So does the upshot of your view on that score, does it mean that the minute the documents were turned over, the proceeding was moot? With regard to the documents that were turned over. Right, which is all we're talking about. I think that goes to Judge Wilkins' point and one of our other jurisdictional points, which is going to contempt. So all we're talking about is the documents that were turned over. Correct. Let's put to one side the documents that were held, and let's assume that there is mootness to that, as you're assuming. With respect to the documents that were turned over, the second they were turned over, the Senate's view is that the proceeding was over. So in other words, because at that point, the only way you can get them back is through some sort of court order to get them back, and that would be in breach of the Speech of Debate Clause. And that supports our argument on appealability, that just like a grand jury, if you wish to appeal an order requiring enforcing a Senate subpoena, you stand on your privilege, you're going to contempt. Correct. So ultimately, the argument about the Speech of Debate Clause devolves into an argument about contempt, that really the only way to assert your rights in this kind of situation, if you feel like you're being subjected to an unfair document request, is to go into contempt. It's similar to a grand jury. When the Senate created this procedure, which this court of appeals twice asked the Senate to do such a thing, to provide that kind of judicial ability to challenge a ruling from the courts on these kind of privileges, the Senate did not then treat themselves in a worse place than the grand jury. It had underlying proceedings that it wanted to not disturb as well as possible while still providing this type of proceeding remedy. And it did so, and it deserves the same respect a grand jury subpoena would have. If it's ordered to be enforced, you would like to appeal it, you go into contempt. So just following up on Judge Srinivasan's question, it's irrelevant to this case, then, that the Senate committee, that the Senate has adjourned. It's irrelevant that the committee has said in its brief it doesn't want any of these materials. Correct? It's totally irrelevant. The only question is, once the materials are turned over, any effort to obtain them is a box of the case. So is the case moot, or is it maybe it's not even a question of mootness? Or maybe your point is we can, your point is this is moot and we don't have to decide what would happen if the Senate weren't saying it didn't need the materials. Let me break that apart. I think it is relevant that the adjournments seem to die of the Senate because we're not, our jurisdictional arguments are not dependent on each other. They're each independent. And one of those is a statutory argument, which is the statute provides very clearly that enforcement action abates. So that might be, I don't mean to cut you off, but that might be a freestanding argument. I took Judge Tatel's question to be with respect to your mootness argument. The adjournment, the fact that the Senate doesn't want the documents anymore, none of that matters because once the documents were turned over, in your view, the case was moot. Once the documents were turned over, the case was, well, the issue had been decided. The case was moot. If they wanted to seek review of that, Mr. Farr had to go into contempt. Right. Now, with the mootness argument, of course, applied to their attorney-client documents, which they've now conceded. Yes. And in that one, where there was still a live issue, obviously the fact we no longer were seeking the documents was quintessentially relevant to the fact that that had become moot as well, but they've now conceded that point. But I do want to point out that – Can I go back to your abatement point? I'm looking at the language of the statute. It says that it won't abate if the committee certifies to the court that it maintains its interest in securing the documents during such adjournment. That's not this case. This case doesn't have anything to do with that. I just respectfully disagree by focusing on a different part of that sentence, Your Honor. It says an action, contempt proceeding, or sanction brought pursuant to this jurisdictional provision abates on the terms seen a die unless the Senate certifies. And if you look at the legislative history, which we cited in our motion, it made clear that there was no debate that the Senate's a continuing body. In the Eastland case, just three years before this law was enacted, it made clear the Senate's a continuing body and there's no mootness issue to its subpoenas because of the adjournment of the Senate. But that raised a concern in the Congress that with regard to Senate subpoenas, enforcement actions and potentially contempt proceedings thereunder could go on indefinitely because the Senate doesn't have to announce a finishing to its investigations. They could continue and continue. How do we address that problem? And they set a default, which was when the Senate adjourns seen a die, the default is the matter finishes. It abates. Jurisdiction abates. The matter abates unless the Senate says we are still interested in those documents so that we don't have people sitting in contempt. During the adjournment. Well, during the adjournment or we would say and beyond. Well, I know, but that's not what the statute says. Even if the court thought that it meant we could only continue to seek them during adjournment, it wouldn't affect the issue here because we're not trying to seek them beyond the adjournment. Maybe I'm reading the statute incorrectly, but I thought during such adjournment was by reference to the certification, not the period. So, in other words, if the Senate certifies, there may be other problems with the argument, but if the Senate certifies that it still wants the documents during the adjournment, then it's basically certifying that it wants the documents not only during the adjournment but beyond. Yes. I mean, otherwise, if it just meant that during the adjournment the matter abated, it's not clear to me how that works as a jurisdictional matter. So the court loses jurisdiction for an hour, like the last adjournment, or four months, and someone comes out of contempt, out of jail, and when the Senate reconvenes, we put them back. Right, because the one thing we know is the statute's designed to – that was by design meant to deal with individuals who were confined. Well, that was certainly one of the interests that was focused, but I would say they weren't limited to just individuals confined because the statute doesn't say the contempt shall abate. It says the action shall abate. So this was a jurisdictional grant to the courts by Congress, and when Congress sets up a jurisdictional statute, courts interpret those very strictly, and that is a provision that goes right to the heart of jurisdiction here. So, again, that's separate from the mootness argument. On that ground alone, we think the matter is beyond – Speaking of separate from the mootness argument, did I read your brief correctly that you think this is blocked not just by mootness but also by 1365b? That's what you're saying. Blocked. Here's what it says. I guess in the mootness argument, right, what their argument for why this isn't moot is the effect of relief, and that effect of relief would be ordering the Senate to no longer use these documents or somehow return these documents as acquired for its legislative use. And our point, and I believe Judge Taylor was mentioning this, the wording in the statute itself says a court can't issue such an injunction or order that would affect the effect of the subpoena. That's why I asked you the question. The question was, do we even need to address the mootness and related constitutional question in view of 1365b? Your brief says, quote, both the speech and debate clause and the limitations under 1365 prevent the court from issuing the order. That's correct. What I read that as saying, you could prevail under either one. Is that true? That's true. Just to clarify, their mootness argument is there is effect of relief, and you can find there's no effect of relief simply as a statutory jurisdictional question. The court cannot order that relief under this jurisdiction. Therefore, there's nothing more we can do. But how can we do that without addressing the speech or debate issue? Because the court can say our ability to grant that relief is precluded by the statute. Whether or not it would also be precluded by speech or debate is precluded by the very terms of our jurisdiction. So how does the statutory language that you are focused on and that Judge Taylor has raised apply in a contempt situation? So suppose that instead of turning over the document, the subject of the request is willing to undergo contempt. Correct. Go to contempt, and then they file an appeal, and they say, wait a minute, this is crazy. This subpoena should be not unenforced. Right. Would you still make the argument that then a resolution would affect the effect of the subpoena? Because it would. What we would say there, Your Honor, would be that it's a court that holds the person in contempt of its own order at that point. And if the appellate court disagreed with the lower court's contempt holding, it reversed the contempt, and the person would be free of the contempt. We would say, and the statute clearly says, the court couldn't then quash our subpoena. It couldn't order the Senate how to proceed an underlying proceeding. It couldn't affect the documents we might have received. It just could reverse the lower court's contempt order and free the person from contempt, either be it a fine or imprisonment. But wouldn't the freeing the person – In other words, the appellate court would be reversing the contempt order, sure. And then the question is, what's the consequence of reversing the contempt order? In one situation, situation A, which is our case, the consequence would be return the documents. The other situation, situation B, the consequence would be get out of jail. Either way, it affects the effect of the subpoena. I would take issue – on situation A, we never had the document. That's why he's in contempt, Your Honor. I was talking about situation A was the one where B was contempt. A is they turn over the documents. Right, and they did not go into contempt. And our point is that what the court is affecting when there's a contempt proceeding is affecting the order of the lower court, which it has jurisdiction to do under 1365. For a court, when there is no contempt, to order the Senate how to use legislative documents as acquired, that isn't affecting its own – its underlying district court order. It's affecting the Senate's proceedings, and that is precluded by 1365B. And so I think that – and again, that also goes to the point of appealability that Mr. First should have stood on his privilege and run in contempt if he wanted to seek review of the matter. Suppose it's totally clear that Congress – suppose it's totally clear that Congress is no longer interested in any legislation – they've dropped the idea completely. They're no longer interested in any more hearings, but they've decided to release all these documents to the press so that the press can poke through them and put pressure on back page. No legitimate legislative objective at all. Still? Moot? Well, the matter became – I first point to this court's own decision in Hurst v. Black where it noted that there was no basis for it to prevent Congress from disclosing the documents if it wanted to. Now, there's nothing in this record that suggests the subcommittee is disclosing every document. I ask you a hypothetical. I understand that, Your Honor. I don't know of any evidence – or, excuse me, any precedent – where this court has ever ordered the Senate not to take action under official action with these documents. Now, I don't know what the court means to prevent. We're talking official committee action on the documents. This feature debate clause protects members of Congress in their legislative activities, including hearings, reports, and all that. I'm asking you – I'm sorry, Your Honor. Continue. Just what would we do if we all agree that the committee intends to do something with it that isn't covered by that? I'm not sure where – Or is your answer everything – whatever they do is protected? Well, I think with regard to the feature debate clause, there's also issues of separation of power. If I may go directly to that question, there's nothing in – I mean, I'm not sure where a court would make a finding that a committee intended to do a release of documents completely separate from its legislative proceedings just to put them out in the public. I mean, I'm not sure where a court could presume to find committee intent to do that that would give it a basis to even order anything with regard to that. I suppose it's not backpage.com. Suppose it's like Planned Parenthood, and Congress has investigated Planned Parenthood and has decided, okay, we're not going to do it anymore, but we've collected all this information about people who use Planned Parenthood, who benefit from it, and we're just going to release all that stuff. Like if Congress issued a final report on its – They're done. They're finished. They're completely finished. They declared we're finished with this. Right, and if it issued those documents in the form of a report to the House – No, not in the form of a report. The report's out. They're finished. Well, I'm not sure – Let me just finish one other thing. I'm sorry, Your Honor. There are all these leftover documents about the internal workings of Planned Parenthood, and they decide, look, we can't get Congress to act on this, so we're just going to release all this information so that the press can put pressure on Planned Parenthood to stop serving these people. And whether or not a court could enjoin the Congress from using those documents?  Again, there's no precedent I've seen where a court would enjoin Congress. I don't think there's a precedent. I know. Well, it's called a hypothetical. The Senate does not believe that the courts have the right to constrain its official proceedings in that way. Well, my question was it's not official. That's built into my question, is that it's unofficial. Senate Rule 29.5 does not allow the disclosure of documents outside of official proceedings or an official decision of the committee. No single member can disclose the documents of a committee's proceedings that aren't otherwise public. So for the committee to make things public, it is official action. There's no distinction there. If you have a situation, so your view is that there's no publication that the Senate can make that would be in violation of Senate rules. It's kind of tautological. If a committee determines that it needs to make matters like it holds a hearing, if the Senate committee here, the subcommittee, issued its report and decided to put all the documents in the appendix of its report here, there's certainly in the Senate's view no basis for the court to say you can't issue that report or you can't make that report public. As long as it's made public as part of the normal proceedings of the Senate, yes, our position is that's beyond the court to effectuate that. But some of the cases, I mean, I think your colleague on the other side pointed to Doe, there's language in those cases that speak to circumstances in which a legislative body does something with materials that's outside of the legislative can. Not in the actual report. Agreed. Then subsequent publications, individuals, members speaking about those at a and, again, the court didn't say you could restrain those actions. It just simply said there might be liability. For instance, a defamatory statement in a committee report that's made public, there's no redress for that. But if a member goes to a press conference and makes a defamatory statement under Hutchinson v. Proxmire, they may be. So there's a distinction there. Well, doesn't it follow that if you're saying that the court has no ability to review what's done with documents on the back end, then wouldn't the logical consequence of that argument, if we were to accept it, be that we have more of a gatekeeping responsibility on the front end? I would say that we're not saying the court can't review how documents are used, depending on what review means. Obviously, if they're used outside of legislative proceedings, there may be some liability that could attach. And in Hutchinson v. Proxmire, the release of information outside of that could. We're saying the court can't restrain a committee of the Senate from how it uses documents it's acquired in its legislative proceedings. Again, previous to the creation of this enforcement mechanism, witnesses before the Senate had to choose to subject themselves to a criminal proceeding or inherent contempt before the Senate to even have a court review the privilege they may have asserted. This proceeding gives them much more process than they ever had. And the court does have a gatekeeping function. It can choose not to enforce the subpoena. And one wouldn't assume error in the district court in deciding to do that as a normal course. Anything else? Okay, thank you. I think the court— How much time did Mr. Corr review? Okay, you can take two minutes, Mr. Corr, here. Thank you, Your Honor. Yeah. Let me start with the last point that Mr. Cavallaro was addressing, and that is whether or not there is an action that can be taken to restrain the further dissemination of the information. And I think the relevant precedent is Doe v. McMillan, where you had a House committee issuing a report, but then the court's order to restrain subsequent uses and subsequent release of that information. In this case, we have the further dissemination of materials on the subcommittee's website, even after you have the release of the legislative report. So I think you have a situation sufficiently like McMillan that that kind of relief can be provided. Secondly, in terms of whether or not a witness has to make a choice between complying with the order or suggesting himself to contempt, I think the original statutory language spoke to that issue, whether or not there would be the ability to appeal the court order. The original 1978 language of Section 1365 stated that in any civil action or contempt proceeding, the court shall assign the action for hearing at the earliest practical date and cause it every way to be expedited. Any appeal or petition for review from any order of judgment in such action shall be expedited. Now, a few years later, the expedition was taken out of the statute as part of a general reform, but it didn't change the appealability of either a contempt order or the final order of the court. As a matter of fact, Judge Collier's final line of her opinion was, this is a final, appealable order. It is the one thing that the court got right. You didn't have to make a choice between subjecting yourself to contempt or appealing the order. As far as whether or not we're asking for or whether or not this would violate Section 1365B, we are not asking for a modification of the subpoena, rather a modification of the district court's order enforcing compliance. And as a consequence, it's certainly fully within the jurisdiction of this court. Thank you. Thank you. Case is submitted.
judges: Tatel, Srinivasan, Wilkins